**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

CIVIL ACTION NO. 2010-77(WOB-CJS)

STEVEN SCOTT                                                                PLAINTIFF

VS.                         <u>MEMORANDUM OPINION AND ORDER</u>

GWENDOLYN KELLEY and
COREY WARNER                                                            DEFENDANTS

        This matter is before the Court on the motions of defendants

Gwendolyn Kelley (Doc. 70)[1] and Corey Warner (Doc. 71) for

summary judgment.

        The Court heard oral argument on these motions on Friday,

January 20, 2012.  Charles Lester represented the plaintiff,

Stephen McMurtry represented defendant Kelley, and Alex

Mattingly and Frank Warnock represented defendant Warner, who

was also present.  Court reporter Lisa Weisman recorded the

proceedings.  The Court thereafter took the motions under

submission.  (Doc. 84).

        Having reviewed the matter further, the Court now issues the

following Memorandum Opinion and Order, which grants the motions

and dismisses this action.

---

[1] Plaintiff refers to Detective Kelley as a male, an evident typographical
error.  On occasion the docket spells Detective Kelley's name as "Kelly,"
but the Court adopts the spelling she uses in the record.

## *I.  Procedural Posture*

Plaintiff was arrested for burglary but the Commonwealth voluntarily dismissed the charges before trial.  *See, e.g.,* Doc. 73-2 at 49-50 (hereinafter "Plf. Depo.").  He then filed this action under 42 U.S.C. § 1983 and state law.  *See* Doc. 6.

The parties dismissed the City of Covington and crime technician Dawn Bayless by stipulation.  The Court dismissed Commonwealth Attorney Rob Sanders and prosecutor LeAnne Beck on immunity grounds.  *See* Docs. 28, 29, 33.

The remaining defendants are Covington Police officers. Officer Warner was assigned the task of looking for fingerprints at the scene.  Detective Kelley was assigned to investigate the crime, and she signed the affidavit submitted in support of an arrest warrant.  *See, e.g.,* Doc. 6-6 (hereinafter "Affidavit"); Doc. 73-1 at 16, 89-90 (hereinafter "Kelley Depo."); Doc. 73-3 at 18-20 (hereinafter "Warner Depo."); Doc. 76-1 ("hereinafter "KYIBRS Report").[2]

Plaintiff maintains that the affidavit contained false information and omitted other material information, thereby violating the Fourth Amendment.  He asserts that defendants' conduct in connection with the affidavit was, at the least,

---

[2] The record contains several copies of the Affidavit and this particular source shows an interlineation.  The Court's citations to depositions use the court-reporter's pagination, not the CM/ECF page numbers.

reckless.  He seeks damages for:  violation of the Fourth Amendment under § 1983; malicious prosecution under § 1983 and state law; abuse of process under state law; and false arrest and false imprisonment under state law.  He has not identified a separate theory of recovery against the remaining defendants under the Fourteenth Amendment or the state constitution.  *See* Doc. 6 at 11 (Count II); Doc. 76 at 10-11, 20, 22-23 (hereinafter "*Response*").

The officers move for summary judgment on the basis of qualified immunity.

## II.  *Factual Background*

The material facts are not in dispute.  Large glass windows form the entryway to Franks Men's Shop in Covington, Kentucky. Through them, the public can see merchandise in display cases. The windows are configured in a deep U-shape.  The windows at the top of the "U" flank the sidewalk, and the interior of the "U" forms the path from the sidewalk to the front door of the store.  *See, e.g.,* Doc. 76-12 at 2-3 (first photo on each page) (hereinafter "Photographs").[3]

On April 24, 2007, the store alarm sounded twice.  The first time was around 2:30 a.m.  The police discovered that one of the windows on the interior of the "U" very near the front

---

[3] The Court is generally familiar with this area and store.  With the parties' permission, the Court visited the site specifically to view the window configuration.

door had been smashed, which allowed someone to reach inside a display case and take clothing valued at $300.  *See* KYIBRS Report at 1, 3; Warner Depo. at 16, 25-27, 47.

Officer Warner found six fingerprints around the smashed area or "point of entry."  He found two prints on the exterior of the glass around the point of entry.  He found four prints on the side of the glass inside the display case.  He documented each print with a separate print card.  *See* Doc. 76-8 at 1-12 (hereinafter "Print Cards"); KYIBRS Report at 3; Warner Depo. at 19-20, 30, 49-51.  Other officers conducted interviews.  A bar patron reported he saw a white male in the area and described him as young, short, and possibly bearded.  *See* KYIBRS Report at 3.  The next morning, Detective Kelley was assigned the case. *See* Kelley Depo. at 16, 19.

Meanwhile, after the officers left the scene, the alarm sounded again around 4:00 a.m.  The storeowner did not bother to call the police, although another detective was assigned to investigate this second alarm.  However, Detective Kelley later interviewed the storeowner, knew that the alarm had sounded again, and learned someone told the storeowner they saw a person carrying clothes down the street near the store around 7:00 a.m. *See* Doc. 76-2 at 1 (hereinafter "Case Activity Log"); Kelley Depo. at 20, 50-51, 62, 69-73; Warner Depo. at 27.

-4-

Detective Kelley thought Patrick Denler might be a possible suspect.  So did Officer Warner.  Mr. Denler was a young white male, well-known to the Covington police, who was suspected in several recent robberies in the area.  Thus, in addition to the notation "unknown" suspects, Mr. Denler was listed by name, description, and "jacket number," as a possible suspect on the evidence form that accompanied the six print cards taken at the scene.  Detective Kelley also testified that she asked the lab technician to check the prints against Mr. Denler's known fingerprints.  *See* Doc. #76-3 (4/24/07 form signed by Officer Warner); Kelley Depo. at 21-22; Warner Depo. at 33-34.

Prints 1 and 2, taken from "inside [the] glass display," and Print 5, taken from the outside, were deemed to have no comparison value.  *See* Print Cards at 1-4, 9-10; Doc. 76-9 at 1 (hereinafter "Bayless Report").  Prints 3 and 4, taken from inside, yielded "negative" results from the "AFIS" database. *See* Print Cards at 5-8; Bayless Report at 1-2.  None of the useable prints matched Mr. Denler's prints.  *See* Case Activity Log at 3.

The card for Print 6 did not expressly state whether Officer Warner found it on the inside or outside of the glass.[4]

_____

[4] This card was the only one where he drew a diagram, but that diagram does not accurately depict the U-shape or clearly depict the side of the glass where the print was located.  *Compare* Doc. Print Cards at 11 (diagram) *with* Photographs.

He did record, however, as he did for others, that Print 6 was "lifted from" the "right middle display window *(point of entry)*."  Print Cards at 11 (emphasis added); *see also id.* at 3, 7 (Prints 2 and 4 "lifted from . . . point of entry").  Before the end of June 2007, the AFIS results identified plaintiff as a "possible candidate" for Print 6, and a subsequent comparison deemed the print a match.  *See, e.g.,* Affidavit; Bayless Report at 1-2; Case Activity Log at 2-3; Response at 7 ("Mr. Scott obviously is in AFIS.").

Detective Kelley wrote Officer Warner on June 21, 2007,[5] and asked if Print 6 was taken from the inside or outside of the glass.  He wrote back on June 26, 2007, and stated:  "the 1st print (per my drawing) was taken from the middle exterior. [Number] 6 was taken from the inside glass portion."  Doc. 76-10; *see also* Case Activity Log at 2 (entries dated 6/21/07 and 6/26/07); Kelley Depo. at 48, 118; Warner Depo. at 31-32.

Officer Warner was mistaken.  Had he or the detective reviewed the crime scene reports and each of the print cards in detail, they may have recognized the discrepancy.  *See, e.g.,* Warner Depo. at 42-43.  Neither did so.  Nor did Detective Kelley personally interview witnesses, speak with the lead officer on the scene who wrote the crime scene report, review

---

[5] She did not personally speak with him because they worked different shifts.  *See* Kelley Depo. at 48.

the crime scene photographs, or consult with the detective assigned to investigate the second alarm.  Defendants do not dispute they failed to perform these tasks, though they did explain why all of the print cards were not available to them. *See* Doc. 81 at 1-3; Doc. 82 at 1-3; Kelley Depo. at 77; Warner Depo. at 39-41.

Thus, when Detective Kelley completed her investigation in early August 2007, wrote her report, and submitted it to a prosecutor, she transmitted the mistaken information that Plaintiff's fingerprint was found on the inside of the glass. This unidentified prosecutor actually prepared the affidavit, but Detective Kelley signed it as the affiant, thereby attesting that it was accurate.  *See* Doc. 76-13 (hereinafter "Kelley Report"); Kelley Depo. at 98-90.[6]

The affidavit generally tracks Detective Kelley's report and states in pertinent part:

> [Plaintiff's name, address birth date, social security number and physical description].
>
> * * * * *
>
> AFFIANT STATES THAT on April 24, 2007 patrol officers from the Covington Police Department responded to an alarm drop at the Frank's Men's Shop which is located in Covington Kentucky at 32 West Pike Street.

---

[6] Plaintiff made no allegations that the named prosecutor defendants prepared the affidavit or had anything to do with the arrest phase of the case.  *See* Doc. 34 at 7-8, 13-16 (transcript of hearing 12/16/10).

The officers arrived and found the front display window broken. The owner of the business was notified and he responded to the scene. The owner Ed Frank stated several items of clothing had been stolen from the display area. Officer Cory (sic) Warner investigated and located several latent prints from the glass inside the display window. Those fingerprints were then secured and sent to the Crime Lab at the Covington Police Department for further examination. Crime Tech Dawn Bayless examined the fingerprints and found that one of the prints had comparison value and found a possible candidate being [Plaintiff]. The print was then confirmed by [illegible interlineation] direct comparison to be that of the left thumbprint of [Plaintiff].

Affidavit.

The affidavit does not reflect all of the details of Detective Kelley's investigation. For example, she had seen the crime scene and location of the smashed window, and had seen the card for Print 6, which noted the print was located at the point of entry. Thus, she knew that plaintiff's fingerprint came from around the point of entry. *See, e.g.,* Kelley Depo. at 56, 78. Also, when Detective Kelley learned in June the print was a match, she obtained an address and telephone number for plaintiff. She called and received no response, so she sent plaintiff a postcard asking him to "Please contact me reference your Burglary," which also did not yield a response. Plf. Depo.

(Defendant's Exhibit 2).[7]   Plaintiff, who was living in Cincinnati at the time of the robbery, testified that he never received Detective Kelley's call or postcard because he was available through a different phone number and was living at a different address.  *See* Plf. Depo. at 5-6, 51, 54-59.  Lastly, Detective Kelley's "shot in the dark" to see if Patrick Denler could be linked to the crime was unsuccessful based on the fingerprint results.  *See, e.g.,* Kelley Depo. at 21-22, 83-84, 108, 117, 119-20.

On the basis of Detective Kelley's affidavit, a judge found probable cause to believe plaintiff committed the burglary, and issued an arrest warrant on August 30, 2007.  *See* Doc. 71-3 at 33.  Years passed.  After a traffic stop in Florida revealed the warrant, plaintiff was arrested in the Summer of 2009, and extradited to Kentucky.  Plaintiff remained in custody from his arrest until around December 7, 2009, when the trial court dismissed the charges at the prosecutor's request.

### III.  *Qualified Immunity*

The moving party to a summary judgment motion bears the burden of demonstrating no genuine issue of material fact and entitlement to judgment as a matter of law.  When a defendant

---

[7] *Compare* Case Activity Log at 2 (entry dated 6/21/07 stating "phone no answer/no machine.  [S]ent postcard to suspect"), *with* Kelley Report at 1 ("Investigating officer located number for the suspect[,] he refused to be interviewed.  A mailing to his residence was returned for bad address.").

moves on the basis of qualified immunity, however, plaintiff bears the burden of showing defendant is not entitled to the defense by establishing:  (1) the officers' conduct violated a constitutional right; and (2) that right was so "clearly established" that a reasonable officer would have known his or her conduct was unlawful.  If plaintiff is successful on both counts, defendants nevertheless are entitled to summary judgment if they show their conduct was objectively reasonable in light of the law existing at the time.  The facts are viewed in a typical summary judgment posture – construed in the light most favorable to the plaintiff – but this does not require the Court to ignore undisputed and material facts, or to accept facts asserted by a plaintiff that do not raise a genuine issue.  *See, e.g., O'Malley v. City of Flint,* 652 F.3d 662, 667 (6th Cir. 2011); *Everson v. Leis,* 556 F.3d 484, 494 (6th Cir. 2009); *Wolgast v. Richards,* 389 F. App'x 494, 501 (6th Cir. 2010); *Burden v. Paul,* Civil Action No. 2009–105 (WOB–JGW), 2011 WL 4431819, at *3 (E.D. Ky. Sept. 22, 2011).

## *IV.  Analysis*

The cornerstone to plaintiff's claims against Kelley and Warner is the assertion that these defendants violated the Fourth Amendment under the clearly established law by the Supreme Court in *United States v. Leon,* 468 U.S. 897, 923 (1984), and *Franks v. Delaware*, 438 U.S. 154 (1978).  Plaintiff

-10-

argues that because both defendants could easily have deduced from the print cards and Winship KYIBRS Report that Print 6 was taken from the outside of the glass, it follows that they either knowingly or recklessly proffered materially false information in support of arrest, in violation of *Leon*.  *See* Response at 12, 15-17.  Plaintiff further argues that because Detective Kelley recklessly omitted material information that would have negated probable cause, her affidavit violates *Franks*.  *See id.* at 12- 15.[8]

### A.  Officers Who Supply Information May Be Held Liable

An "action under § 1983 . . . lie[s] against an officer who obtains an invalid search warrant by making, in his affidavit, material false statements either knowingly or in reckless disregard for the truth. . . .  This standard originates in *Franks*."  *Wolgast*, 389 F. App'x at 502 (internal quotations and citation omitted); *see also Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989).

Contrary to Officer Warner's arguments, *see* Doc. 82 at 7, the Sixth Circuit recently noted that liability lies not only against the officer who "made" the affidavit, but also against officers who supplied information for the affidavit.

Although Officer Parent is the official "affiant," because [Officer] Richards actually drafted the

---

[8] Plaintiff does not seek to hold Officer Warner liable on an "omissions" theory.  *See* Response at 14, n.3.

> affidavit information for Parent, Richards' actions can be the source of a Fourth Amendment violation. *See, e.g., United States v. Brown,* 298 F.3d 392, 408 (5th Cir. 2002) ("a deliberate or reckless misstatement or omission by a government official who is not the affiant may nevertheless form the basis of a *Franks* claim.").

*Wolgast*, 389 F. App'x at 503 n. 5. Thus, the fact that neither defendant physically prepared the contents of the affidavit, and the fact that Officer Warner did not sign it, does not absolve them of potential liability as a matter of law.

### B. Absence Of Probable Cause Is Central To *Franks* Inquiry And Remaining Claims

In *Franks,* the Supreme Court discussed what a defendant must show in order to secure an evidentiary hearing to challenge an affidavit tendered to support a probable cause. Plaintiff thus contends to overcome the claim of qualified immunity, he "must establish: (1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." Response at 11. He cites the *Vakilian* decision for this two-part test. *Id.; see also Vakilian v. Shaw,* 335 F.3d 509, 517 (6th Cir. 2003).

Similarly, under *Leon,* a showing of falsity does not violate the Fourth Amendment unless the false information results in an absence of probable cause **and** the officers acted unreasonably. "In . . . *Leon* . . . we recognized that a defendant challenging a

search will lose if either: (1) the warrant issued was supported by probable cause; or (2) it was not, but the officers executing it reasonably believed that it was." *Pearson v. Callahan,* 555 U.S. 223, 241-42 (2009).

Indeed, probable cause, or the absence thereof, is a common element to plaintiff's § 1983 Fourth Amendment and malicious prosecution claims, and the state malicious prosecution and false arrest claims.  Plaintiff also rests his state abuse of process and false imprisonment claims on lack of probable cause. *See, e.g., Sykes v. Anderson,* 625 F.3d 294, 307-08 (6th Cir. 2010); *Wolgast,* 389 F. App'x at 501; *Burden,* Civil Action No. 2009-105 (WOB-JGW), 2011 WL 4431819, at *3; *Martin v. Schutzman,* Civil Action No. 2008-104 (WOB), 2009 WL 3413970, at *2 & n. 3 (E.D. Ky., Oct. 21, 2009); Response at 12-15, 20, 22-23.

Plaintiff cites decisions from other circuits to show that the *Franks* inquiry and/or probable cause requirement to support an arrest warrant is "clearly established." *See* Response at 12. However, Sixth Circuit precedent directly supports this view. *See Kuslick v. Roszczewski,* 419 F. App'x 589, 592 (6th Cir. 2011) ("This [two prong-*Frank/Vakilian*] standard is clearly established.").

### 1.  "Substantial Showing" Under *Franks*

Plaintiff does not define "substantial," and his analysis proceeds on the assumption that if he can simply identify an

error or omission, then he meets the first prong.  The law is not entirely clear,[9] and the parties have not adequately briefed the subject.

Based on the plain language of the first prong, the Court finds that plaintiff has not made a genuine showing, much less a substantial one, that Officer Warner's or Detective Kelley's conduct was "reckless" or "deliberate."  At best their investigation and documentation can be characterized as sloppy or negligent.  Furthermore, Sixth Circuit authority in the criminal and § 1983 contexts holds that the mere presence of omissions or affirmative erroneous information will not satisfy a plaintiff's burden of making a "substantial" showing on this prong.[10]

---

[9] For example, the *Wilson v. Russo* decision cited by the parties and by many Sixth Circuit "*Franks*" decisions (either directly or indirectly), does not actually contain the "substantiality" language.  The test it fashioned describes the plaintiff's burden and the *Franks* test as a showing by a "preponderance" of the evidence.  *See* 212 F.3d 781, 786-87 (3d Cir. 2000).  Thus, not all of the Sixth Circuit § 1983 cases cite "substantial" as the showing a plaintiff must make.  *Compare, e.g., Sykes,* 625 F.3d t 305 and *Hill,* 884 F.2d at 275, *with Vakilian,* 355 F.3d at 517.

[10] When defendants argue omissions in the criminal context, they "rarely" succeed in securing an evidentiary hearing because the Sixth Circuit "has repeatedly held that the standard for obtaining a *Franks* hearing is higher for a claim of material omission than for an allegedly false affirmative statement."  *United States v. Khami,* 362 F. App'x 501, 505 (6th Cir.), *cert. denied,* 130 S. Ct. 3345 (2010).  In *Mays,* the Sixth Circuit applied that same reasoning in the § 1983 context when it held that officers who prepare warrants are not constitutionally required to include "all potentially exculpatory evidence . . . in an affidavit."  *Mays v. City of Dayton,* 134 F.3d 809, 816 (6th Cir. 1998).  The *Mays* decision specifically "reiterate[d]," with emphasis, that "except in the *very* rare case where the defendant makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is

Since plaintiff does not meet the first requirement of the two-prong test, his *Franks* claim fails.  Alternatively, the Court will assume that this prong is met.

### 2.  Materiality & Probable Cause Under *Franks & Leon*

To assess whether plaintiff has met his burden on the second prong of the *Franks* inquiry, the Court omits the "false" material, includes the omitted material, and decides whether probable cause exists.  *See, e.g., Sykes,* 625 F.3d at 305; *Hill,* 884 F.2d at 275.  "Police have probable cause to arrest a person when they have reasonably trustworthy information that is sufficient to warrant a prudent man in believing that the suspect had committed . . . an offense based on the facts and circumstances within the police's knowledge at the moment in question."  *Martin,* Civil Action No. 2008-104 (WOB), 2009 WL 3413970, at *3 (internal quotations and citations omitted).

---

inapplicable to the omission of disputed facts."  *Id.*  In a later decision in *Hale,* where a civil rights claim was based on the officer's alleged subpar investigation, the Sixth Circuit held that the "mere existence of omissions alone is ordinarily not enough to make [the requisite] strong preliminary showing."  *Hale v. Kart,* 396 F.3d 721, 727 (6th Cir. 2005).  In the criminal context a Sixth Circuit decision emphasized that the showing must be "substantial," and held even erroneous information affirmatively presented by an affidavit did not meet that threshold.  *United States v. Fields,* No. 98-5798, 2000 WL 1140557, at *4 (6th Cir. 2000) ("[W]hile Fields has produced evidence that some information in the affidavit was inaccurate, and that from that evidence it might be inferred that . . . the officers lied in their affidavit, any inference concerning the officers' conduct cannot be said to amount to substantial evidence that they made false statements in the affidavit that were intentionally made with reckless disregard for the truth.").

While it is true and "clearly established that an individual's mere presence at a crime scene does not constitute probable cause for an arrest," this Court may not "ignore the context of the case" in making a probable cause determination. *Smith v. Patterson,* 430 F. App'x 438, 441 (10th Cir. 2011) (internal quotations and citations omitted).

Even without the "inside" designation for plaintiff's fingerprint, the affidavit still would have provided that Officer Warner located several fingerprints from the "glass" at the "scene" where a "display window [was] broken" and that the lone print with comparison value belonged to plaintiff.  A fingerprint placing plaintiff at the scene provided Detective Kelley with objective physical evidence that he could have been involved in the burglary.  This sort of evidence stands in stark contrast to cases where the officer focused on the plaintiff based on nothing more than a "hunch" or "speculation."  *See, e.g., Sykes,* 625 F.3d at 307-08 (police believed robbery was "inside job," but only evidence in support of probable cause was that plaintiff was present when a robbery took place and called the police to report it afterward).

Moreover, a print on the outside of the glass at the point of entry is not conclusively exculpatory.  A "finding of probable cause does not require evidence that is completely convincing or even evidence that would be admissible at trial;

all that is required is that the evidence be sufficient to lead a reasonable officer to conclude that the arrestee has committed . . . a crime." *Harris v. Bornhorst,* 513 F.3d 503, 511 (6th Cir. 2008); *see also, e.g., Martin,* Civil Action No. 2008-104 (WOB), 2009 WL 3413970, at *3 ("Probable cause is a practical, nontechnical conception that deals with probabilities, not certainties and the factual and practical considerations of everyday life.") (internal quotations and citations omitted). "The existence of probable cause in a § 1983 action is generally a jury question . . . [b]ut under § 1983, an officer is entitled to qualified immunity if "he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent." *Wolgast,* 389 F. App'x at 501 (internal quotations and citations omitted).

Eyewitness testimony alone is sufficient to establish probable cause because, unless the officer has actual evidence showing otherwise, eyewitness testimony is deemed "trustworthy." *See, e.g., Wilson Russo,* 212 F.3d 781, 790-91 (3d Cir. 2000); *Peet v. City of Detroit,* 502 F.3d 557, 564 (6th Cir. 2007); *Ahlers v. Schebil,* 188 F.3d 365, 370 (6th Cir. 1999). While a fingerprint alone may not be sufficient to establish guilt

beyond a reasonable doubt,[11] fingerprints have been considered to be "trustworthy" in the same way as eyewitness identifications.[12] Likewise, cases have held or indicated that a fingerprint alone constitutes probable cause.[13]

When the Court considers the omitted facts available to Detective Kelley, the case for probable cause is even stronger.

---

[11] *See United States v. Lee,* 1 F.3d 1247 (9th Cir. 1993) (evidence of bank robber's identity consisted of three eyewitnesses and defendant's fingerprint on the demand note; trial judge gave curative instruction that "fingerprint evidence standing alone is not sufficient to establish guilt beyond a reasonable doubt"); *United States v. Collon,* 426 F.2d 949 (6th Cir. 1970) (discussing cases where fingerprint evidence held insufficient to support a conviction, specifically, instances where age of print could not be ascertained and location of the print could have "innocently imprinted").

[12] *See, e.g., Davis v. Mississippi,* 394 U.S. 721, 724-25 (1969) (fingerprints characterized as trustworthy); *see also United States v. Scheffer,* 523 U.S. 303, 334 & n. 24 (1998) (Stevens, J., dissenting) (discussing studies on reliability of polygraphs, eyewitness accounts, and fingerprints).

[13] *See, e.g., United States v. Spencer,* 522 F. Supp. 463, 467, n.2 (E.D.N.Y. 1981) ("Defendant . . . has belatedly attacked the validity of the arrest warrant issued by a Magistrate of this Court.  The affidavit sworn to by the FBI agent, Exhibit #2, alone generates probable cause by the statement that a fingerprint found at the scene of a bank robbery was that of Mr. Spencer."); *Rhodes v. Prince,* Civil Action No. 3:05-CV-2343-D, 2006 WL 4038288, at *13 (N.D. Tex. July 10, 2006) ("The fingerprint card was the only basis for suspecting Plaintiff committed the burglary.  Thus, if the individual Defendants knew the fingerprint card did not come from the crime scene, they . . . acted without probable cause."), *vacated in part on different grounds,* 273 F. App'x 328 (5th Cir. 2008) (under Texas law arrest alone insufficient to sustain malicious prosecution claim); *Piergrossi v. Karcewski,* No. CIV. A. 93-4190, 1995 WL 318797, at *4 (E.D. Pa. May 13, 1995) (citing *Booker v. Koonce,* 2 F.3d 114, 117 (5th Cir. 1993), for the proposition that it "impl[ies] that a single fingerprint found at a crime scene is sufficient to establish probable cause for seeking an arrest warrant;" facts in *Booker* were police obtained a warrant "based upon an affidavit stating that Booker's thumb print was found at the crime scene" an defendant was indicted and jailed for some six or seven months, before his case was dismissed); *c.f., United States v. Clermont,* No. 07-20174-CR, 2007 WL 1696018, at *1 (S. D. Fla. June 12, 2007) (case where officers found defendant's "fingerprints . . . on outside glass of a bathroom window of a home that had been burglarized, and that . . . was the point of entry;" held officers had probable cause to pull over car arrest without a warrant based on fingerprint evidence and eyewitness to burglary's description of vehicle).

The seven facts plaintiff alleges Detective Kelley should have included in her affidavit are:

> 1. An eyewitness identified the young white suspect who was hanging around the area at the time of the break in;
>
> 2. Another witness told the store owner that a young white male was carrying clothes early in the morning;
>
> 3. Neither witness mentioned seeing a black man;
>
> 4.  A second burglary occurred at the store in the early hours of the morning;
>
> 5. Detective Kelley suspected Patrick Denler and why;
>
> 6. Prints 3 and 4 from inside the glass did not match any prints in AFIS; and
>
> 7. Plaintiff's physical description.

*See* Response at 14-15.  The seventh point is inaccurate because the affidavit did, in fact, describe plaintiff's physical characteristics.  Even so, these omitted facts, alone or in combination, are in no way exculpatory and do not negate the presence and significance of plaintiff's fingerprint.

Contrary to plaintiff's theory, the omitted facts do not show that someone else committed the crime to the exclusion of plaintiff.  They do not, for example, establish that any eyewitness saw who broke into the store at 2:30 in the morning. They do not establish that one person, acting alone, committed the first crime.  And, if the Court is to consider information

plaintiff asserts should have been provided, then plaintiff cannot create a "genuine" issue by ignoring the undisputed facts that undermine his interpretation of probable cause.

That is, plaintiff's fingerprint was not simply found on the outside of a window by the sidewalk where a passerby might innocently deposit a fingerprint. As plaintiff himself notes, and cannot dispute in light of the evidence of record, the fingerprint was found on the outside of the glass above the point of entry. "Defendants continue to attempt to claim that this fingerprint was found at the point of entry somehow establishing probable cause; however, the only black fingerprinting dust identified in the photograph is at eye level, the individual who robbed this store broke and entered the bottom of the window." *See Response* at 19. Eye level is a location where one could easily envision the burglar bracing with one hand to bend over and smash the window at a lower spot.

Even more fundamentally, Detective Kelley considered but ruled out the very suspect plaintiff wanted her to include in the affidavit. She had done so by the time she completed her investigation and before she submitted her results. Prints 3 and 4 did not match any prints, meaning they specifically did not match Mr. Denler's known prints.

Because probable cause existed regardless of the aspects of the affidavit plaintiff's challenges, he fails to meet his burden on the second *Franks* prong as a matter of law.

### C. Probable Cause Forecloses Any Argument Regarding Sufficiency Of Pre-Arrest Investigation Under *Sykes*

Even reading plaintiff's response broadly, the Court does not construe it as alleging defendants' post-arrest conduct (such as Detective Kelley's testimony before the grand jury or their personal interactions with the prosecutor) as a basis for a malicious prosecution claim under *Sykes*.  Instead, his arguments are that their pre-arrest inadequacies and the "falsehood" that made its way into the arrest affidavit triggered the chain of events that resulted in his prosecution.

Even if plaintiff is challenging the quality of defendant's pre-affidavit investigation, however, his claims also fail as a matter of law.  As noted above, probable cause existed at the point Detective Kelley submitted her affidavit and, at most, plaintiff's allegations about defendants' failure to consult the print cards and each other during their investigation raises a claim of negligence which will not support a cause of action under *Franks*.[14]

---

[14] *See, e.g., Peet,* 502 F.3d at 565 (refusing to adopt rule that police must release suspects from incarceration if exculpatory evidence arises because that "would give investigators the responsibility to reevaluate probable cause constantly with every additional witness interview and scrap of evidence collected"); *Ahlers,* 188 F.3d at 370-72 (officers cannot "simply turn a blind eye toward potentially exculpatory evidence" once

Also, while *Sykes* held that "the fact that [police officers] did not *make* the decision to prosecute does not per se absolve them from liability," 625 F.3d at 311, and held that malice is not an element of a malicious prosecution claim, *id.* at 309, it did not dispense with the requirement of a lack of probable cause. "[B]ecause a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution." *Id.* at 308.

Accordingly, for the reasons just discussed, *Sykes* affords plaintiff no basis for relief, even if the malicious prosecution claim it recognizes is considered clearly established as of the date the events here took place.

**D. Objective Reasonableness Also Supports Summary Judgment**

Defendants argue that, even if they violated clearly established constitutional law, they are entitled to summary judgment if their conduct was "objectively reasonable." The "'objective legal reasonableness' standard analyzes claims of immunity on a fact-specific, case-by-case basis to determine

---

probable cause established officers under no obligation to investigate further or look for exculpatory evidence); *id.* at 373-74 (lack of thorough investigation at best "might support an inference of negligence"); *Carrasquillo v. City of Cleveland,* No. 1:10-CV-00219, 2011 WL 3841995, at *4 (N.D. Ohio Aug. 30, 2011) ("'Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused.") (quoting *Ahlers,* 188 F.3d at 371).

whether a reasonable official in the defendant's position could have believed that his conduct was lawful, judged from the perspective of the reasonable official on the scene." *Cochran v. Gilliam,* 656 F.3d 300, 306 (6th Cir. 2011).

The *Cochran* panel rejected the defendants' argument

> for an overly narrow reading of the "clearly established" standard, one in which it would appear no case would be sufficiently on point if the facts at issue were not identical. . . . We are not alone in rejecting this narrow reading. As the Supreme Court has stated: "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent."

*Id.* at 310 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, (1987)).

In *Cochran,* the Sixth Circuit noted that it was "clearly established" that officers incur no Fourth Amendment liability if they merely "stand by" and "neither encourage nor direct a private individual" who is carrying out a repossession the Fourth Amendment. *Id.* In addition, Supreme Court authority that predated the conduct at issue held that, when officers take an "active role in a seizure or eviction . . . they may no longer be entitled to qualified immunity." *Id.* (citing *Soldal v. Cook County, Ill.*, 506 U.S. 56, 69 (1992)).

Because the officers in *Cochran* started as standbys but
ended up participating in a landlord's seizure of tenant
property, the Sixth Circuit refused to characterize their
conduct as "objectively reasonable in light of the legal rules
that were 'clearly established' at the time." *Id.* at 311.  The
situation facing this Court is in a different posture from the
clear fact-specific and bright-line precedent in the *Cochran*
case.

Just days ago, the Supreme Court indicated that summary
judgment on qualified immunity is "correct" when none of its
decisions have "found a Fourth Amendment violation on facts even
roughly comparable to those present" in the instant case, and
"some . . . opinions may be read as pointing in the opposite
direction." *Ryburn v. Huff,* No. 11-208, ___ S. Ct. ___, ___,
2012 WL 171121, at *3 (Jan. 23, 2012).[15]

Although the general Fourth Amendment principles set forth
in *Franks* and *Leon* are clearly established, the parties have not
cited, nor has the Court found, any Supreme Court decision or
other authority that clearly holds a fingerprint is insufficient

---

[15] *See also, e.g., Walker v. Davis,* 649 F.3d 502, 504-05 (6th Cir. 2011)
(McKeague, Circuit Judge, dissenting) ("For a right to be clearly
established, the contours of the right must be sufficiently clear that a
reasonable official would understand that what he is doing violates that
right. . . .  In other words, pre-existing law must dictate, that is truly
compel (not just suggest or allow or raise a question about), the
conclusion for every like-situated, reasonable government agent that what
the defendant is doing violates federal law in the circumstances. . . .
If the law did not put the officer on notice that his conduct would be
clearly unlawful, summary judgment based on qualified immunity is
appropriate.") (internal quotations and citations omitted).

probable cause as a matter of law under any circumstances.  The authorities discussed above support the opposite view that a lone fingerprint can be sufficient, particularly where no other genuinely exculpatory information compels a different conclusion.

As an alternative basis for summary judgment, the Court finds that a reasonable police officer in Detective Kelley's position could have come to the conclusion that, with none of the useable fingerprints matching the person they first suspected, the sole fingerprint that yielded a match supported a request for an arrest warrant.

The same is true for Officer Warner, even if he acted objectively unreasonably in guessing about the exact location of the fingerprint when he answered Detective Kelley's question. *See id.* at *5.  The Court has not found a clear decision condemning such behavior, and certainly not as a matter of constitutional law.

**E.   John And Jane Does**

Discovery closed in July 2011, the deadline for filing dispositive motions passed in October 2011, and plaintiff has not moved to amend or substitute individuals for the ten John and Jane Doe Defendants.  *See* Docs. 6, 23, 55, 69.  If a plaintiff fails to substitute fictitious parties after the end of discovery, then dismissal without prejudice is appropriate.

*See, e.g., Petty v. County of Franklin, Ohio,* 478 F.3d 341, 346 & nn. 2-3 (6th Cir. 2007); *Searcy v. County of Oakland,* 735 F. Supp. 2d 759, 771 (E.D. Mich. 2010); *Rigney v. Marcum,* No. CIV. 06-187-REW, 2007 WL 2979931, at *1 & n.1 (E.D. Ky. 2007).

Therefore, having reviewed this matter, and the Court being sufficiently advised,

**IT IS ORDERED THAT:**

1. The motions of the Detective Kelley and Officer Warner for summary judgment (Docs. 70, 71) be, and are hereby, **GRANTED;**

2. Plaintiff's action against Detective Kelley and Officer Warner be, and is, hereby, **DISMISSED WITH prejudice;**

3. The remainder of the action against any and all Doe defendants be, and is, hereby, **DISMISSED without prejudice;** and

4. A separate judgment shall enter concurrently herewith.

This 14th day of February, 2012.



**Signed By:**

*William O. Bertelsman* WOB

**United States District Judge**